**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DONALD D. CARSTENS,

*Plaintiff,*

v.

MICHIGAN DEPARTMENT OF TREASURY and PENSION BENEFIT GUARANTY CORPORATION,

*Defendants.*

Civil Action No. 1:09-cv-01596 (RMC)

**DEFENDANT PENSION BENEFIT GUARANTY CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Pension Benefit Guaranty Corporation ("PBGC") moves to dismiss the Plaintiff's Complaint (the "Complaint") under FED. R. CIV. P. 12(b)(6) because the Complaint fails to state a claim upon which relief can be granted, for reasons set forth fully in the Memorandum in Support accompanying this Motion.

September 1, 2009

Respectfully submitted,

/s/ Frank A. Anderson
Office of the Chief Counsel
ISRAEL GOLDOWITZ
Chief Counsel
KAREN L. MORRIS
Deputy Chief Counsel
STEPHANIE THOMAS
Assistant Chief Counsels
FRANK A. ANDERSON
CASSANDRA R. BURTON
Attorneys

PENSION BENEFIT GUARANTY CORPORATION
1200 K Street, N.W.
Washington, D.C. 20005-4026
Telephone: (202) 326-4020 ext. 3759
Facsimile: (202) 326-4112
anderson.frank@pbgc.gov

Attorneys for Defendant PBGC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DONALD D. CARSTENS, | ) | |
| *Plaintiff,* | ) | |
| v. | ) | Civil Action No. 1:09-cv-01596 (RMC) |
| MICHIGAN DEPARTMENT OF TREASURY and PENSION BENEFIT GUARANTY CORPORATION, | ) | |
| *Defendants.* | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT PENSION BENEFIT GUARANTY CORPORATION'S MOTION TO DISMISS**

ISRAEL GOLDOWITZ
Chief Counsel
KAREN L. MORRIS
Deputy Chief Counsel
STEPHANIE THOMAS
Assistant Chief Counsel
FRANK A. ANDERSON
CASSANDRA R. BURTON
Attorneys

PENSION BENEFIT GUARANTY CORPORATION
1200 K Street, N.W.
Washington, D.C. 20005-4026
Telephone: (202) 326-4020, ext. 3759
Facsimile: (202) 326-4112
anderson.frank@pbgc.gov

Attorneys for Defendant PBGC

September 1, 2009

## INTRODUCTION

The plaintiff in this action ("**Carstens**" or "**Plaintiff**") is the sole remaining shareholder of Union Steel Products, Inc., a dissolved Michigan corporation ("**Union Steel**"). Union Steel formerly sponsored the Union Steel Products, Inc. Union Employees Pension Plan (the "**Pension Plan**"), a defined benefit pension plan. Defendant Pension Benefit Guaranty Corporation ("**PBGC**") is the United States government agency that administers the pension plan termination insurance program established by Title IV of the Employee Retirement Income Security Act of 1974 ("**ERISA**").[1] PBGC became statutory trustee of the Pension Plan when it terminated in 1999, pursuant to an agreement with Carstens.

In 2001, PBGC filed suit against Union Steel, Carstens individually, and other members of the Union Steel controlled group for termination liability in the amount $4.7 million, plus interest.[2] In 2004, PBGC and Carstens settled the litigation. Pursuant to the settlement, Carstens was required to pay $2.5 million to PBGC in exchange for a release of liability against Carstens, Union Steel, and other members of the Union Steel controlled group. Carstens made the payment and PBGC granted the release.

In March 2009, the Unclaimed Property Division of the Michigan Department of Treasury ("**Michigan Treasury"**) notified PBGC that it had come into possession of 5,985 shares of Principal Financial Group, Inc., formerly known as Principal Mutual Life Insurance Company ("**PFG**"), that it believed might rightfully belong to the Pension Plan. This was, in fact, the case. Certain of the liabilities of the Pension Plan were

---

[1] 29 U.S.C. §§ 1301-1461 (2006).

[2] *PBGC v. Union Steel Products, Inc., et al.*, No. 01-cv-828 (D. W.D. Mich. filed December 20, 2001, dismissed by stipulation on March 30, 2004).

funded by a contract with PFG. The stock is compensation to the contract holder as a result of the demutualization of PFG. The stock, therefore, belongs to the Pension Plan. As statutory trustee of the Pension Plan, PBGC is the legal owner of all the Pension Plan assets. PBGC filed a claim with the Michigan Treasury for the PFG stock. Around the same time, Carstens also filed a claim for the PFG stock. The Michigan Treasury notified the parties of its decision that PBGC was the proper owner. Carstens then filed suit in Michigan state court.

Upon learning of the Michigan state court action, PBGC filed a Notice of Removal of the action to the United States District Court for the Western District of Michigan. Shortly thereafter, PBGC filed a Motion to Dismiss or, Alternatively, Motion to Transfer Case to the United States District Court for the District of Columbia. Carstens did not file a response to PBGC's Motion. PBGC's Motion to Transfer Venue was granted and its Motion to Dismiss was denied as moot.

PBGC now moves to dismiss Carstens' Complaint for failure to state a claim upon which relief can be granted, and to strike Carstens' request for attorneys' fees. Carstens' claim must fail because the insurance policy that gave rise to the PFG stock was clearly purchased by the trustees of the plan for the benefit of the participants and, as a result, is an asset of the Pension Plan. Because PBGC is the statutory trustee of the Pension Plan, it is the legal owner of all plan assets. In addition, attorney's fees are not recoverable under 29 U.S.C. § 1303(f), the only section under which PBGC may be sued.

**STATUTORY BACKGROUND**

In enacting ERISA, Congress sought both (1) to provide minimum standards to assure the "equitable character" and "financial soundness" of ongoing private employee benefit plans,[3] and (2) to guarantee payment of benefits to participants whose defined benefit pension plans have terminated. Separate titles of ERISA address these two goals: Title I generally regulates the administration of ongoing pension plans, and Title IV regulates plan termination and related liabilities, and the payment of benefits under terminated plans.[4]

PBGC is a wholly owned United States government corporation modeled after the Federal Deposit Insurance Corporation, and was established to administer the mandatory pension termination insurance program established by Title IV of ERISA.[5] PBGC receives no funds from general tax revenues, and the United States is not responsible for the agency's obligations.[6] When a pension plan terminates without sufficient assets to pay its obligations to participants, PBGC guarantees the payment of certain benefits,

---

[3] 29 U.S.C. § 1001(a).

[4] The popular names "Title I" and "Title IV" derive from terminology of the original act of Congress, Pub. L. No. 93-406, 88 Stat. 832 (1974). Title I corresponds to subchapter I of chapter 18 of title 29 of the United States Code, 29 U.S.C. §§ 1001-1191c. Title IV corresponds to subchapter III of that chapter, 29 U.S.C. §§ 1301-1461.

[5] *See* 29 U.S.C. § 1302; *see also PBGC v. LTV Corp.*, 496 U.S. 633, 636-37 (1990).

[6] 29 U.S.C. § 1302(g)(2); PBGC Ann. Rep. at i (2007) ("Ann. Rep."), http://www.pbgc.gov/docs/2007 annual_report.pdf.

subject to statutory limits.[7] More than 1.3 million participants in more than 3,700 terminated pension plans rely on PBGC for current and future pension benefits.[8]

PBGC is charged with carrying out the purposes of Title IV: providing timely and uninterrupted payment of benefits, encouraging employers to maintain voluntary private pension plans, and maintaining insurance premiums "at the lowest level consistent with carrying out its obligations" under Title IV.[9]

PBGC serves two roles with respect to terminated plans. First, PBGC typically becomes statutory trustee, in which its primary function is to collect and to marshal the assets of the terminated plan.[10] Second, as statutory guarantor, PBGC pays benefits under the terminated plan "subject to the limitations and requirements of subtitle B of [Title IV of ERISA]."[11]

Once a pension plan terminates under Title IV, it differs from an ongoing plan regulated under Title I of ERISA in a number of ways, including: (1) participants can no longer earn additional benefits or vesting credits; (2) the parties who were responsible for plan administration and management no longer serve in those roles; (3) no further minimum funding contributions accrue; (4) the plan's assets are taken over by PBGC and pooled with the assets of other terminated plans; and (5) participants' right to receive

---

[7] *See* 29 U.S.C. §§ 1322, 1342(b), (c), 1361.

[8] Ann Rep. at 7.

[9] *See* 29 U.S.C. § 1302(a).

[10] *See* 29 U.S.C. § 1342(b), (d).

[11] 29 U.S.C. § 1361; *see also* 29 U.S.C. §§ 1302(a)(2), 1322.

benefits under the terms of the plan is replaced with their right to receive benefits as set forth in Title IV.

The "exclusive means" for bringing actions against PBGC under Title IV, including actions against the corporation in its capacity as trustee, is 29 U.S.C. § 1303(f).[12] The remedies available in a suit under that provision are limited to "appropriate equitable relief."[13] A court may award "all or a portion of the costs and expenses incurred in connection with such action to any party who prevails or substantially prevails in such action."[14]

**STATEMENT OF FACTS**

**1. Plan Termination**

Union Steel established the Pension Plan on or about January 1, 1971. (Compl. ¶ 8). In September 1999, PBGC and Union Steel became parties to an agreement terminating the Plan, establishing December 31, 1995, as the termination date, and appointing PBGC as statutory trustee.[15] Carstens, as Chief Executive Officer of Union Steel, signed the agreement. (*Id.* at p. 2). When the Pension Plan terminated, it did not have sufficient assets to cover its liabilities. PBGC made up the shortfall with its own assets and has been paying monthly benefits to participants since becoming trustee.

---

[12] 29 U.S.C. § 1303(f)(4).

[13] 29 U.S.C. § 1303(f)(1).

[14] 29 U.S.C. § 1303(f)(3).

[15] Agreement for Appointment of Trustee and Termination of Plan pp. 1-2, attached as Exhibit A to the Complaint.

**2. Procedural History**

As described above, this action started in the Circuit Court for the County of Ingham, Michigan. PBGC filed a Notice of Removal to the United States District Court for the Western District of Michigan on July 20, 2009. On July 23, 2009, the United States District Court for the Western District of Michigan sent notice to all parties that the case was removed from the Michigan Circuit Court for the County of Ingham. On July 28th, 2009, PBGC filed a FED R. CIV. P. 12(b)(3) motion to dismiss the Complaint without prejudice for improper venue or, in the alternative, to transfer the case to a district where proper venue exists. Carstens did not file a response to PBGC's 12(b)(3) motion. On August 18, 2009, the United States District Court for the Western District of Michigan granted PBGC's motion to transfer the case to the United States District Court for the District of Columbia, and denied PBGC's motion to dismiss as moot.

**3. The Complaint**

On June 16, 2009, Carstens filed suit against PBGC and Michigan Treasury challenging the latter's decision to grant PBGC's claim on the PFG stock. The Complaint's prayer for relief requests that the court enter a declaratory judgment providing the following judicial declarations:

> 1. The unclaimed property consisting of the Compensation [PFG Stock] has reverted to Union Steel Products, Inc., a dissolved Michigan corporation.
>
> 2. The unclaimed property consisting of the Compensation should be paid over to the Plaintiff as the sole remaining shareholder of Union Steel Products, Inc.
>
> 3. The PBGC has no interest in the unclaimed property consisting of the Compensation.

4. Grant all other appropriate and equitable relief the Court deems proper.

5. Award Plaintiff his costs and attorney fees of this action.

Compl. ¶¶ A-E.

Claims one through three are fundamentally identical because granting any of the three would result in the same outcome. This Motion will treat all three as one claim that challenges PBGC's right to the PFG stock. The fourth claim is unanswerable because it fails to make a specific request. Claim five is relevant because it requests that the Plaintiff's costs and attorneys' fees be awarded back to him.

**STANDARD UNDER RULE 12(b)(6)**

Under the Federal Rules of Civil Procedure, a complaint must provide the grounds for relief under the "short and plain statement" standard of Rule 8(a). A complaint need not contain detailed factual allegations, but must contain more than labels or conclusions; a formulaic recitation of the elements of a cause of action will not suffice.[16]

In considering a motion under Rule 12(b)(6), a court should presume that the factual allegations of a complaint are true, and construe such facts liberally in plaintiffs' favor.[17] A court should not, however, accept "'inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint' nor 'legal conclusions cast in the form of factual allegations.'"[18] Similarly, a court need not accept as true a

[16] *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

[17] *Jones v. Ritter*, 2008 WL 2765338, *2 (D.D.C. July 16, 2008).

[18] *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1275 (D.C. Cir. 1994)).

complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.[19]

## ARGUMENT

### I. CLAIMS ONE THROUGH THREE MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The crux of Carstens' claim for the PFG stock is that PBGC has no right to it because in 2004 PBGC executed a Full and Final Release of all Claims (the "**Release**") in favor of Carstens, Union Steel, and other parties as part of a settlement. (Compl. ¶ 12). Indeed, the Release protects Carstens and others from any future liability relating to the Pension Plan. Carstens asks the Court to declare that the PFG stock has reverted back to Union Steel because he believes that it is a corporate asset and that PBGC no longer has the right to collect against Union Steel's or Carstens' assets. But, the assets in question never belonged to Union Steel—they are property of the Pension Plan.

As set forth below, Carstens' claims for the PFG stock must fail because the insurance policy that was replaced by the PFG stock was purchased in the name of the Trustees of the Pension Plan for the benefit of the Pension Plan and, as a result, is an asset of the Pension Plan. As the statutory trustee of the Pension Plan, PBGC is the legal owner of any Pension Plan assets. Hence, the claims for the PFG stock fail to state a claim upon which relief may be granted and should be dismissed.

---

[19] *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

**A. The PFG stock is an asset of the Pension Plan.**

"On or about January 30, 1987, the trustees of the [Pension] Plan purchased a single premium group annuity contract from Principal Mutual Life Insurance Company ("PFG") for the purpose of providing retirement payments to participants covered under the [Pension] Plan."

Compl. ¶ 9.

According to assertions in the Complaint, the PFG insurance policy was purchased by the trustees of the Pension Plan for the exclusive benefit of the Pension Plan. Accordingly, there can be no argument that the resulting stock is not an asset of the Pension Plan. The assets of a plan cannot inure to the benefit of an employer and plan assets must be held for the exclusive purpose of providing benefits to plan participants and their beneficiaries.[20] Once PBGC becomes statutory trustee of a pension plan, it steps into the shoes of the former trustees and has all of their rights and duties under law.[21]

Plaintiff fails to allege the only circumstance that could lead to a reversion of Pension Plan assets to Union Steel. According to the terms of the Pension Plan:

> Upon termination of the Plan and after the allocation and distribution of the Retirement Fund as provided herein, and after the satisfaction of all fixed and contingent liabilities under the Plan, any funds remaining in the Retirement Fund because of an erroneous actuarial computation may revert back to the Company.

Compl. Exh. C.

---

[20] 29 U.S.C. § 1103(c)(1).

[21] *See* 29 U.S.C. § 1342(c)(1).

This point was reiterated to Carstens in a letter from PFG in March 2009.[22] The letter's language could not be more clear:

> This contract is used to provide retirement payments to participants covered under this defined benefit plan. This contract will remain active until PFG makes the last annuity payment to the last living person entitled to benefits under the contract. Enclosed is a copy of the plan and contract as found in our archives. Please refer to pages 21 and 25 of the plan document which states that any **surplus** assets revert to the employer. [emphasis added]

*Id*.

Plaintiff was clearly aware of the contents of this letter because it was attached to the Complaint in support of another proposition. (Compl. ¶ 11). Curiously, the proposition that the exhibit is intended to support is that the PFG stock was credited to the Pension Plan. *Id*. Reading the plain language of the allegations in his Complaint and its Exhibits, it is clear that Carstens knew:

1. The PFG contract was purchased by and in the name of the Trustees of the Pension Plan for the express purpose of paying benefits to participants of the Pension Plan.[23]

2. PFG credited the PFG stock that resulted from the demutualization to the Pension Plan as a plan asset.[24]

3. The Pension Plan was terminated by PBGC and PBGC is now trustee of the Pension Plan.[25]

---

[22] Letter from Patricia Hjelmeland, RIS Compliance, Principal Financial Group, to Donald Carstens (March 10, 2009) (attached to Complaint as Exhibit C).

[23] Compl. ¶ 9.

[24] Compl. ¶11.

[25] Compl. ¶ 10.

4. The assets of the Pension Plan could revert back to Union Steel only after the satisfaction of all fixed and contingent liabilities of the Pension Plan.[26]

On its face, the Complaint contains no support for Carstens' claims that the PFG stock has reverted back to him as the sole remaining shareholder of Union Steel. On the contrary, the assertions in the Complaint, and the exhibits attached to the Complaint, all clearly support PBGC's position that the PFG stock is a Pension Plan asset. As a result, the claims should be denied.

**B. PBGC is the rightful owner of plan assets.**

ERISA is very clear when describing how assets of a terminated single employer pension plan should be treated. When a statutory trustee is appointed pursuant to 29 U.S.C. § 1342(c), "the trustee shall have the power described in subsection (d)(1) . . . ." Subsection (d)(1)(A)(ii) of 29 U.S.C. § 1342(c) further states that the trustee shall have the power to "require the transfer of all (or any part) of the assets and records of the plan to himself as trustee."

Assuming that all of the factual allegations in the Complaint are true and construing such facts liberally in Plaintiff's favor, it is clear that Plaintiff's Complaint contains no support for the claims made therein. The Release that is the centerpiece of Plaintiff's argument is irrelevant because the assets in question never belonged to the Plaintiff or his company. PBGC is not asserting liability against Plaintiff or his company; it is merely attempting to take possession of the assets of a pension plan that is now its responsibility as statutory trustee.

[26] Compl. Exh. C.

That PBGC would request all assets of the Pension Plan to be turned over to it should not come as a surprise to Carstens. In 1999, when PBGC and Carstens agreed to terminate the Pension Plan and appoint PBGC as trustee of the plan, the agreement that Carstens signed made it clear that PBGC is now the rightful owner of all assets of the Pension Plan:

> (4) The Company [Union Steel] and any other person having possession, custody or control of any records, assets or other property of the Plan shall transfer, convey and deliver to PBGC such records, assets or property. . . .

Compl. Exh. A.

Because the PFG stock is an asset of the Pension Plan and PBGC is the statutory trustee of the Pension Plan, claims one through three of the complaint should be dismissed.

**II. CARSTENS IS NOT ENTITLED TO ATTORNEYS' FEES, REGARDLESS OF THE OUTCOME OF THIS CASE.**

Carstens seeks an award of attorneys' fees against PBGC without stating the legal basis under which they should be awarded to him. Because Carstens cannot recover attorneys' fees under Title IV of ERISA, his request should be stricken.

Under the well established "American Rule," litigants are required to pay their own attorneys' fees, except where fee-shifting is specifically authorized by statute.[27] Section 1303(f) is the "exclusive means" for bringing action against PBGC with respect to a plan, and although that provision specifically authorizes recovery of "costs and

---

[27] *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).

expenses," it does not authorize attorneys' fees.[28] In contrast, the two provisions of Title IV that authorize suit against defendants *other* than PBGC specifically authorize attorneys' fees. Section 1370(e)(1) authorizes attorneys' fees in suits against parties other than PBGC for violation of certain Title IV provisions.[29] And section 1451(e) authorizes attorneys' fees in suits against parties other than PBGC, the Secretary of Treasury, or the Secretary of Labor involving multiemployer plans.[30]

By expressly including attorneys' fees in these provisions and omitting any mention of them in the provision authorizing actions against PBGC, Congress left no doubt about its intent to preclude an award of attorneys' fees against the agency.[31] The court so held in *Stephens v. US Airways Group*, another action in this jurisdiction.[32] The court dismissed the fee request against PBGC as a matter of law:

> Because Plaintiffs can sue [PBGC] only under § 1303(f), and § 1303(f) does not provide for attorneys' fees, Plaintiffs have not stated a claim for such fees. . . . Defendants' motion to dismiss Plaintiffs' request for attorneys' fees as a matter of law will be granted.[33]

---

[28] *See* 29 U.S. C. § 1303(f)(4) (exclusive means); 29 U.S.C. § 1303(f)(3) (costs and expenses).

[29] 29 U.S.C. § 1370(e)(1).

[30] 29 U.S.C. § 1451(e). Moreover, Title I of ERISA expressly provides for attorneys' fees, 29 U.S.C. § 1132(g), in contrast to 29 U.S.C. § 1307(f)(3), which does not.

[31] *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) ("when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); *United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1248 (D.C. Cir. 2008) (same).

[32] 555 F. Supp. 2d 112 (D.D.C. 2008) (Collyer, J.).

[33] *Id. at* 122-23.

The Court followed the same reasoning in dismissing a claim for attorneys' fees in Davis v. Pension Benefit Guaranty Corp., No. 08-1064, slip op. at 11-12 (D.D.C. March 17, 2009). The Court should do the same here.

In sum, Carstens cannot recover attorneys' fees under Title IV; accordingly, the request in paragraph E of the Complaint should be stricken.

**CONCLUSION**

For the foregoing reasons, PBGC respectfully requests that its Motion to Dismiss and to Strike be granted.

September 1, 2009

Respectfully submitted,

/s/ Frank A. Anderson

Office of the Chief Counsel
ISRAEL GOLDOWITZ
Chief Counsel
KAREN L. MORRIS
Deputy Chief Counsel
STEPHANIE THOMAS
Assistant Chief Counsels
FRANK A. ANDERSON
CASSANDRA R. BURTON
Attorneys

PENSION BENEFIT GUARANTY
CORPORATION
1200 K Street, N.W.
Washington, D.C. 20005-4026
Telephone: (202) 326-4020, ext. 3759
Facsimile: (202) 326-4112
anderson.frank@pbgc.gov

Attorneys for Defendant PBGC